IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PERRY ROBINSON, SR., as Next Friend of PERRY ROBINSON, JR., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:09-CV-2118 |
| STEPHEN OWENS, et al., | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendants' Motion for Summary Judgment (Docket Entry No. 17). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED**.

### I. Case Background

**A. Procedural History**

Plaintiff Perry Robinson, Sr., ("Plaintiff") as next friend of Perry Robinson, Jr., ("Perry Jr.") filed this action on July 6, 2009, pursuant to 42 U.S.C. § 1983 ("Section 1983") against Stephen Owens ("Coach Owens"), Patrick Hendricks ("Hendricks"),[2] and Barbers Hill Independent School District ("BHISD") (collectively,

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 3.

[2] At Plaintiff's request, Hendricks was later dismissed from the lawsuit. Plaintiff's Notice of Dismissal - Partial, Docket Entry No. 10; Order Granting Dismissal, Docket Entry No. 13.

"Defendants"), claiming they violated his equal protection and due process rights under the Fourteenth Amendment of the United States Constitution.[3]  Plaintiff requests compensatory and exemplary damages in the total amount of $2,500,000.[4]  Defendants move for summary judgment on all of Plaintiff's claims.

**B.   Factual History**

This case is about an African-American student athlete who was injured while weight training at his middle school.[5]

In April 2008, Perry Jr. was a fourteen-year-old eighth-grade student at Barbers Hill Middle School, a public middle school in Mont Belvieu, Texas.[6]  He participated in multiple school sports, including track, football, and basketball.[7]

On April 7, 2008, Perry Jr. went to his parents and complained of a back ache that had begun after running hurdles for track the

---

[3]   Complaint, Docket Entry No. 1.

[4]   Id. ¶ 36.

[5]   When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001). The court thus relies on Plaintiff's supported recitation of the facts, even though Defendants call this recitation a "glaring mischaracterization" of the true circumstances. See Defendants' Reply to Plaintiff's Response, Docket Entry No. 21, p. 1.

[6]   Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 19, Ex. A, Deposition of Perry Jr., pp. 7-8.

[7]   Id. at 10.

previous week.[8]  They took him to a chiropractor who wrote a note to the school excusing Perry Jr. from athletics because of a sprained back until April 14, 2008.[9]  However, during the week after his chiropractor's note expired, Perry Jr.'s back continued to bother him.[10]

On April 22, 2008, Plaintiff went to Perry Jr.'s school to speak with his son's athletic teachers and to tell them that Perry Jr. should not participate in athletics for the remainder of the week because of his back.[11]  He first spoke with Sandy Rogers ("Rogers"), the school nurse, who would not allow him to speak directly with the athletic teachers.[12]  Plaintiff avers that she did promise, however, to send an e-mail to the athletic teachers about the matter.[13]  Rogers denies that she made such a promise and claims

---

[8] Id. at 13-14, 16.  Perry's deposition testimony and affidavit conflict with respect to whether Perry went to a school nurse around this time to complain of his back pain.  See id. at 16-17; Ex. C, Affidavit of Perry Jr., ¶ 1.

[9] Id. Ex. A, Deposition of Perry Jr., pp. 13-16; Ex. C, Affidavit of Perry Jr., ¶¶ 2-3.

[10] Id. at Ex. A, Deposition of Perry Jr., pp. 21-22.  Perry Jr.'s deposition may conflict with itself with respect to whether his coaches expressly permitted him to go back to working out.  See id. at 22 (stating first that "I wanted to go work back out, and [the coaches] didn't let me," and, then, that, "They said it was okay.").

[11] Plaintiff's Response, Docket Entry No. 19, Ex. B, Deposition of Plaintiff, pp. 11-12.

[12] Id. at 12-13.

[13] Id. at 13.

that she directed Plaintiff to speak directly with Perry Jr.'s coaches about his son's back.[14]

The next day, Perry Jr. attended his weight-lifting class.[15] One of the exercises that day was a deadlift, which required Perry Jr. to squat, grip a loaded barbell, and lift it off the floor until he was in a standing position.[16] Perry Jr. did not tell Coach Owens about his back ache prior to his first lift of 180 pounds.[17] After this lift, Perry Jr. states that Coach Owens instructed him to add more weight, so they added an additional 90 pounds to the bar for a total of 270 pounds.[18] Perry Jr. had previously lifted that same amount of weight and said that he could do it.[19] This time, he was unsuccessful in his attempt to lift the weight.[20] He stepped back and told Coach Owens that he could not lift the weight and that his back was hurting.[21] Perry Jr. states that Coach Owens told him to finish so the class could be released.[22] Perry Jr.

---

[14] Defendant's Motion for Summary Judgment ("Defendant's Motion"), Docket Entry No. 17, Ex. C, Declaration of Rogers, ¶ 4.

[15] Plaintiff's Response, Docket Entry No. 19, Ex. A, Deposition of Perry Jr., pp. 23-24.

[16] Id. at 24.

[17] Id. at 26-27.

[18] Id. at 27-28.

[19] Id. at 28.

[20] Id. at 29.

[21] Id.

[22] Id.

again unsuccessfully attempted to lift the weight.[23]  At that point, the period ended and the class left.[24]  Perry Jr. told another coach before he left that his "back was hurting real bad."[25]  The coach told him to go to the nurse's office.[26]

Plaintiff picked up Perry Jr. from school at the end of the day and took him to see a chiropractor.[27]  He was given heat and massage treatments and told to take over-the-counter pain relievers.[28]  A day or two later, Perry Jr. saw another doctor who suggested that he might need back surgery.[29]  Perry Jr. continued to participate in athletics for the rest of the school year, but he underwent back surgery on May 23, 2008, and had physical therapy throughout the following summer.[30]  The following school year, he could not play football, but he did play basketball and ran track until he was sidelined by bunion surgery.[31]  Perry Jr. claims that his back has continued to be sore since his back surgery.[32]

---

[23]   Id.

[24]   Id. at 29-30.

[25]   Id. at 30.

[26]   Id.

[27]   Id. at 37.

[28]   Id. at 41.

[29]   Id. at 43.

[30]   Id. at 44-47.

[31]   Id. at 51.

[32]   Id. at 48.

## II. Summary Judgment Motion

Defendant moves for summary judgment on all of Plaintiff's claims. Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled

to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Section 1983 imposes liability upon one who, acting under color of state law, deprives another of a federally protected right.[33] "A plaintiff cannot succeed on a [Section] 1983 claim merely by showing any deprivation of his rights; [Section] 1983 was intended to preserve rights protected by federal law." Hernandez v. Torres, 2010 WL 4116737, at *8 (5th Cir. Oct. 20, 2010) (citing Wright v. Collins, 766 F.2d 841, 849 (5th Cir. 1985)).

**A. School District Liability Under Section 1983**

Plaintiff argues that the summary judgment evidence raises a fact issue with respect to whether a custom or practice of BHISD led to a violation of Perry Jr.'s constitutional rights.

A local government is responsible under Section 1983 only "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). The

---

[33] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Board of Trustees are the policymakers of Texas school districts as a matter of law. See Jackson v. Houston Indep. Sch. Dist., 189 F.3d 467, 453 (5th Cir. 1999). A plaintiff may demonstrate the existence of a policy by presenting evidence of a persistent, widespread practice of school officials and employees of which the Board of Trustees had actual or constructive notice. See id.

Perry Jr. alleges that Coach Owens treated him differently than white students. He further alleges that, after his weight-lifting injury occurred, the school nurse exhibited little concern, put some ice on his back for ten minutes, and sent him back to class.[34] Plaintiff alleges that he went to Perry Jr.'s school the day before his son's injury to speak to the school nurse and to tell the coaches that Perry Jr.'s back was still bothering him and that he was not to engage in weight-lifting for the rest of that week.[35] Plaintiff alleges that the school nurse refused to allow him to speak directly to the coaches, but that she promised she would e-mail them with the information.[36] Finally, Plaintiff alleges that at a school game prior to his son's injury, another coach warned him that his son was at an all-white school and that he should take care around Coach Owens.[37]

---

[34]   Plaintiff's Response, Docket Entry No. 19, Ex. A, Deposition of Perry Jr., pp. 35-36.

[35]   Id. at Ex. B, Deposition of Plaintiff, pp. 11-13.

[36]   Id. at 12-13.

[37]   Id. at 35-36.

This evidence is insufficient to raise a fact issue whether the BHISD Board of Trustees had actual or constructive knowledge of a persistent, widespread practice of any substantive due process violations or racial discrimination by BHISD officials and employees.  See Jackson, 189 F.3d 467 at 453.  In short, Plaintiff presents evidence of his own and his son's interactions with Coach Owens and the school nurse, along with an alleged warning about Coach Owens from another school coach.  As Defendant eloquently states, Plaintiff has failed to allege, much less provide summary judgment evidence, "that the BHISD School Board adopted policies, regulations, bylaws, or ordinances that contributed to Perry [Jr.'s] injuries, []or that the Board permitted persistent and widespread practices or practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy."[38]  In fact, BHISD provides evidence that, prior to this lawsuit, the Board of Trustees had never received any complaint about racial discrimination in the school's athletic program generally or with respect to Coach Owens specifically.[39] Thus, even assuming that Perry Jr.'s constitutional rights were violated, there is simply no evidence allowing the court to impute knowledge to BHISD and, thus, permit liability.  Plaintiff's argument with

---

[38]   Defendant's Motion, Docket Entry No. 17, p. 14 (citing Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984) (internal quotations omitted).

[39]   Defendant's Motion, Docket Entry No. 17, Ex. D, Declaration of Dr. Greg Poole (BHISD Superintendant since at least 2007); Ex. E, Declaration of Carmena Goss (President and Member of BHISD Board of Trustees since 2004).

respect to BHISD's liability on his Section 1983 claims is without merit.

Accordingly, the court **RECOMMENDS** that Defendant BHISD's motion for summary judgment be **GRANTED**.

**B.   Qualified Immunity**

Defendant Owens argues that he is entitled to qualified immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, __ U.S. __, __, 129 S.Ct. 808, 815 (2009). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir. 2002). Conclusory allegations and assertions will not suffice to carry this burden. Michalik v. Hermann, 422 F.3d 353, 262 (5th Cir. 2005).

To overcome a claim of qualified immunity, the plaintiff must allege that the defendant (1) violated a constitutional right that (2) was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson, 129 S.Ct. 808. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly

11

unlawful official action turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Wernecke v. Garcia, 591 F.3d 386, 392 (5th Cir. 2009). "A defendant will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized." Hernandez, 2010 WL 4116737, at *9 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). The court has discretion to decide which of the two prongs of the test to address first in light of the circumstances of its case. Pearson, 129 S.Ct. at 818.

To determine whether a claim states a violation of a constitutional right, the Fifth Circuit has held that "[s]uch claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under [Section 1983]." Castellano v. Fragozo, 352 F.3d 939, 953-54 (5th Cir. 2003) (en banc).

**1. Bodily Integrity**

Plaintiff claims that the right here in question is a student's liberty interest in his bodily integrity. Plaintiff is correct that, under the Fourteenth Amendment, bodily integrity is a protected liberty interest. See, e.g., Doe v. Taylor Independent School District, 15 F.3d 443 (5th Cir. 1994) (holding that a

12

student's liberty interest was violated when a teacher sexually molested her). The United States Supreme Court has held that a person's bodily integrity may be violated under circumstances involving physical confinement or corporal punishment. See Parham v. J.R., 442 U.S. 584 (1979); Ingraham v. Wright, 430 U.S. 651 (1977). The Fifth Circuit has also held that a right to bodily integrity may be violated under circumstances involving severe physical abuse to a foster child. Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F.3d 872 (5th Cir. 2004).

Plaintiff cites to Lopez v. Houston Indep. Sch. Dist., 817 F.2d 351 (5th Cir. 1987), overruled by Walton v. Alexander, 44 F.3d 1297, 1304 n.4 (5th Cir. 1995), in support of this claim. Lopez originally held that a school bus driver was entrusted with the care of students attending school under the state's compulsory education statute and that, therefore, his failure to protect one child from injury inflicted by another child could support an action under Section 1983 "if the jury finds it rose to the level of callous indifference and was a cause of injury." Id. at 356. Although Lopez can be distinguished on a number of grounds, not the least of which is that it involved one private party injuring another private party, Lopez was explicitly overruled by Walton, which found that the driver's conduct in Lopez was "not the type of restraint on personal liberty nor the type of affirmative action by

13

the state" that should be grounds for liability under Section 1983. Walton, 44 F.3d at 1304 n.4.

This case does not involve sexual abuse,[40] physical confinement,[41] corporal punishment,[42] or severe physical abuse to a child under the state foster care system.[43] The court has been unable to find, and the parties have not guided it to, any federal case whatsoever wherein a student has brought suit under Section 1983 for a weight-lifting or other athletics-related injury and succeeded in his or her claim. Even assuming, arguendo, that such an injury could, under some circumstances, support a cause of action under Section 1983 for violation of the right to bodily integrity, the facts in this case simply do not give rise to a supportable claim as a matter of law. The note from Perry Jr.'s doctor excusing him from participating in athletics had expired nine days before his injury. Perry Jr. testified that he could lift the weight on the bar and that he had, in fact, previously lifted the same amount of weight on the same exercise. Even assuming that Plaintiff's testimony is true that Coach Owens instructed him to deadlift 270 pounds, Coach Owens' verbal conduct in urging Perry Jr. to complete the exercise is not

---

[40] Doe, 15 F.3d 443.

[41] Parham, 442 U.S. 584.

[42] Ingraham, 430 U.S. 651.

[43] Hernandez, 380 F.3d 872.

unconstitutional. On these facts, the court will not extend a student's liberty interest in bodily integrity to this type of conduct.

Accordingly, the court **RECOMMENDS** that Perry Jr.'s claim against Coach Owens be **DISMISSED**.

### 2. Equal Protection

The court next addresses Plaintiff's claim against Coach Owens for racial discrimination under the Equal Protection Clause and Section 1983. Plaintiff must prove that Perry Jr. received different treatment from that received by similarly situated individuals and that this unequal treatment stemmed from discriminatory intent. See Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Id.

Perry Jr. testified that Coach Owens was not his position coach on any team and that the coach would not praise Perry Jr. when he did something good, although he would praise some of the white students when they did something good.[44] As a matter of law, this evidence is simply not enough to raise a constitutional claim

---

[44] Plaintiff's Response, Docket Entry No. 19, Ex. A, Deposition of Perry Jr., pp. 61-63.

under the equal protection clause. "Where the conduct at issue consists solely of speech, there is no equal protection violation." Williams v. Bramer, 180 F.3d 699, 706, clarified, 186 F.3d 633 (5th Cir. 1999) (holding that the use of a racial epithet without harassment or other conduct depriving the victim of his established rights does not constitute an equal protection violation); see also Priester v. Lowndes County, 354 F.3d 414, 423-24 (5th Cir. 2001) (applying the test to find no equal protection violation).

Here, Plaintiff merely contends that Coach Owens' lack of praise is enough to support his equal protection claim. The court disagrees. Perry Jr. testified that he never heard Coach Owens say anything overtly racial, such as a racial epithet or joke.[45] Coach Owens' failure to praise Perry Jr. is not a constitutional violation without any direct evidence of discrimination or any other evidence of harassment or deprivation of rights.

Accordingly, the court **RECOMMENDS** that Plaintiff's equal protection claim against Coach Owens be **DISMISSED**.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto

---

[45] Id. at 64.

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. The original of any written objections shall be filed with the United States District Clerk electronically.

**SIGNED** in Houston, Texas, this 22nd day of November, 2010.

Nancy K. Johnson
United States Magistrate Judge